Sidney Carroll BECK *v.*
STATE of Arkansas

CA CR 84-156                    676 S.W.2d 740

Court of Appeals of Arkansas
Divison II
Opinion delivered October 10, 1984

*Hawkins & Metzger,* by: *Claude S. Hawkins, Jr.,* for appellant.

*Steve Clark,* Att'y Gen., by: *Jack Gillean,* Asst. Att'y Gen., for appellee.

TOM GLAZE, Judge. This appeal is from appellant's conviction of possession with intent to deliver a controlled substance and criminal use of a prohibited weapon, for

which he was sentenced to twenty years and five years respectively, to run concurrently. Appellant raises nine points for reversal.

The facts leading to appellant's arrest are undisputed. On April 25, 1982, the appellant was a passenger in a car stopped by Ashdown police officer, Greg Fox, and Sevier County deputy, John Sullivan, who was visiting Fox and was riding patrol with him. Sullivan was not in uniform, but he was armed. Fox stopped the car after he observed it weaving within its lane. While Fox was running a check on the license of Jimmy Doss, the driver, Sullivan asked Doss if he could look in the trunk. Doss gave him permission to open the trunk, and Sullivan found and removed an ice chest of beer. Fox testified that when the beer was found, he decided to take all four occupants of the car to the station for a breathalyzer test. Fox saw and removed a Crown Royal sack from the floor of the car and found inside it three boxes of bullets. When he questioned the appellant about the gun that went with the bullets, appellant told Fox it was under a jacket on the backseat. While Fox was retrieving that gun, Sullivan shouted to alert Fox that appellant had a pistol in his hand. When appellant failed to drop the gun after Fox's second or third command to do so, Sullivan grabbed the gun from his hand. The officers then removed guns from the handbags of the two female passengers and transported all four people to the Ashdown jail.

While Sullivan was locking Doss's car before leaving it on the roadside, he saw and opened a leather pistol case and found inside a white powdery substance that was later identified as methamphetamine. The car was taken to the City Barn where a search was conducted and various other items found, including hypodermic needles, two weight scales, and two sifters.

The appellant filed pretrial motions to suppress items seized and a motion in limine requesting that the State not be allowed to question appellant at trial about prior drug-related convictions. Items removed from the car when it was searched at the Car Barn were suppressed, but the trial court denied the motion dealing with the methamphetamine. In

addition, the court ruled that cross-examination on appellant's prior convictions would be permitted.

We will discuss the appellant's nine points for reversal in the order he presented them. Appellant first contends that the trial court erred in ruling on his motion in limine that evidence of his prior drug-related convictions would be permitted on cross-examination for impeachment purposes. Appellant contends that the potential prejudice greatly outweighed any probative value. The appellant further contends that the court's ruling forced him to give up his right to testify. This same argument was made by defendants in two cases that this Court decided on the same day, *Bell* v. *State,* 6 Ark. App. 388, 644 S.W.2d 601 (1982), and *Williams* v. *State,* 6 Ark. App. 410, 644 S.W.2d 608 (1982). In both cases, we found that the trial courts had not abused their discretion in ruling that the State would be permitted to impeach the defendant's testimonies under Rule 609 of the Arkansas Uniform Rules of Evidence. In both, we relied upon *Smith* v. *State,* 277 Ark. 64, 639 S.W.2d 348 (1982), in which the Supreme Court upheld denial of the defendant's motion in limine and the introduction of evidence of prior convictions under Rule 609. In *Smith,* the Supreme Court noted that the question of admissibility under Rule 609 must be decided on a case-by-case basis. *Id.* at 69, 639 S.W.2d 350; *see also Washington* v. *State,* 6 Ark. App. 85, 638 S.W.2d 690 (1982). As in *Bell* and *Williams,* in the instant case, we do not find that the trial court abused its discretion in denying appellant's motion in limine or that the court's ruling deprived him of his right to testify.

Appellant's second point for reversal is that the court erred in not suppressing any evidence that resulted from Deputy Sullivan's participation in the search and arrest. The incidents occurred in Ashdown, which is in Little River County. Sullivan is a deputy in Sevier County and was riding with Officer Fox only because the two are friends and former coworkers. Because Sullivan was outside his jurisdiction as a deputy, according to appellant, he had no authority to search the vehicle to find the chest of beer in the trunk. It was finding the beer that led Fox to arrest appellant and the others, according to Fox's testimony. Appellant

claims the original search was void and that all evidence seized as a result of that search should have been suppressed. A similar objection was urged in *Logan* v. *State,* 264 Ark. 920, 576 S.W.2d 203 (1979). Logan was arrested in St. Francis County by a Crittenden County deputy sheriff, J.M. Davis, who was accompanied by a St. Francis County deputy sheriff, Sam Hughes. Logan argued on appeal that the arrest made by Davis was illegal and, as a consequence, all items seized and his confession were inadmissible as fruits of the illegal arreest. The Supreme Court found the arrest to be legal because Davis was accompanied by Hughes who "was also present in his capacity as a deputy sheriff and participated in making the arrest." *Id.* at 923, 576 S.W.2d at 205. We find the facts in the instant case even stronger than the facts in *Logan,* because here, Fox undisputedly initiated the stop and made the arrest in his own county. Sullivan merely assisted him.

Appellant's third point for reversal is that the trial court erred in not suppressing evidence seized as a result of an illegal arrest. In our examination of the abstract, we fail to find any objection to evidence based upon an illegal arrest. It is well settled that we do not consider issues or objections raised for the first time on appeal. *Brown* v. *State,* 5 Ark. App. 181, 636 S.W.2d 286 (1982).

Appellant's fourth point for reversal is that the trial court erred in not suppressing appellant's statement because he was under the influence of alcohol and drugs to the extent that his statement was not voluntarily and knowingly made. The car in which appellant was a passenger was stopped at about 11:30 P.M., and he was questioned and a statement taken about twelve hours later. Officer Fox testified that he could not smell alcohol on appellant, but that appellant "was rocking from heel to toe under the influence" when the car was stopped. Fox said that his speech was slurred. Deputy James Crouse, who was on duty at the sheriff's office the night Beck was brought in, testified that on that night, the appellant "just stood there," but that the next day appellant was upset and was beating on a door in the sheriff's office. Crouse said, "He appeared to be something . . . people had told me . . . that they thought he was coming down off some type of high or something.

At the pretrial suppression hearing, the appellant claimed that he had not slept for a week, that he had consumed a quart-and-a-half of whiskey each day of that week and that he had ingested over a half a gram of crystal amphetamine when he was arrested. He claimed not to have been aware of what was happening for eight days after his arrest. Federal Agent Larry Carver, one of the officers who took appellant's statement, testified that appellant told him he had been up for several days and had taken some drugs, but Carver said that appellant could understand what Carver was saying, could respond in an understandable fashion to what was said, and in Carver's opinion "understood what was going on."

Our appellate courts have repeatedly held that when testimony conflicts on the issue of voluntariness, it is for the trial court to weigh the evidence and resolve the credibility of the witnesses. *Lockett* v. *State,* 275 Ark. 338, 629 S.W.2d 302 (1982); *Marbley* v. *State,* 9 Ark. App. 190, 656 S.W.2d 717 (1983); and *Profit* v. *State,* 6 Ark. App. 51, 637 S.W.2d 620 (1982). We have also held that the defendant's testimony regarding his interrogation is not entitled to more weight than that of the officers. *Id.*

The appellant compares his circumstances to those of the defendant in *Townsend* v. *Sain,* 372 U.S. 293 (1963), in which the Court set out standards for determining when a confession is inadmissible as a result of coercion. *Townsend* is clearly not applicable to the facts at bar because Townsend confessed to three murders after a police doctor allegedly gave him an injection of scopolamine, a "truth serum." The appellant in the instant case does not allege that he was coerced into making a statement nor that he was drugged by the participating officers.

Appellant's fifth point for reversal is that the trial court erred in allowing testimonies of Laura Dickinson and Doyne Branch or, in the alternative, in failing to grant appellant a continuance. Appellant based his objection to these witnesses' testimony upon the State's failure to disclose the names of the witnesses until the day before trial. We note that appellant filed his motion for discovery only two days

before trial, so we are unable to see how the appellant was prejudiced or how the prosecution could have complied any sooner. In Laura Dickinson's case, because she was a co-defendant of appellant, she would not have been a potential witness for the State until two days before trial, when a motion for severance (which appellant joined in filing) was granted. In Doyne Branch's case, appellant's argument is based upon a hearing that occurred in chambers immediately before the trial began. Counsel for appellant objected to Branch's testifying that he had test fired the weapon. The prosecutor responded that Branch would not testify that he test fired the weapon, but only that "This is a machine gun." Nevertheless, Branch did testify that he test fired it, but his test resulted in the gun firing only one time, rather than several times, automatically. We fail to see how this testimony prejudiced the appellant at all. In fact, the testimony was more favorable to the appellant than to the State.

On the question of a continuance, a trial court has broad discretion in determining whether to grant a continuance. *Christian* v. *State*, 6 Ark. App. 138, 639 S.W.2d 78 (1982). The trial court's refusal to grant a continuance will not be reversed absent a clear abuse of discretion amounting to a denial of justice, and appellant has the burden to demonstrate such abuse. *Id.* It is also settled law that in the absence of a showing of prejudice, we cannot say the refusal of a continuance is error. *Id.* The appellant has not demonstrated that the trial court abused its discretion or that he was prejudiced by the denial of a continuance.

The appellant's sixth point for reversal is that the court erred in admitting into evidence the weapons removed from the purses of Laura Dickinson and Sonya Orlovic. The appellant alleged that the weapons were not relevant to any charge filed against him and that the prejudice greatly outweighed the probative value. However, the State, citing *Harshaw* v. *State*, 275 Ark. 481, 631 S.W.2d 300 (1982), contends that the weapons were properly admissible as part of the overall circumstances of the crime. In *Harshaw*, a defendant objected to the admission of testimony of acts that had been committed by three others. The Supreme

Court found the testimony admissible because it linked the defendant to the crime and was therefore relevant to him. The Court quoted the following from *Russell* v. *State*, 262 Ark. 447, 559 S.W.2d 7 (1977):

> [W]hen acts are intermingled and contemporaneous with one another, evidence of any or all of them is admissible to show the circumstances surrounding the whole criminal episode.

*Harshaw* at 485, 631 S.W.2d at 303. We believe the rule in *Harshaw* controls here and, therefore, agree that the trial court correctly admitted the weapons seized from Dickinson and Orlovic.

Appellant's seventh point for reversal is that the trial court erred in admitting documents pertaining to chain of custody of the methamphetamine, because the documents had not been disclosed to appellant in discovery. Although we find in the abstract of record that appellant objected to admission of the documents, his objection was not based on these grounds. It is well settled that appellant cannot change his grounds for objection on appeal. *Wilson* v. *State*, 9 Ark. App. 213, 657 S.W.2d 558 (1983).

Appellant's eighth point for reversal is that the trial court erred in allowing Doyne Branch to give opinion evidence without being qualified properly as an expert witness. Branch is an agent with the United States Treasury Department's Bureau of Alcohol, Tobacco and Firearms. He testified that the weapon removed from under appellant's coat in the back seat of the car was an automatic weapon. Appellant based his objection on the fact that Branch's familiarity with firing the weapon did not qualify him to testify about design characteristics and functions of automatic weapons. Rule 702 of the Arkansas Uniform Rules of Evidence provides as follows:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or

education, may testify thereto in the form of an opinion or otherwise.

Mr. Branch testified that he had worked for the Bureau for thirteen years. He testified that he had attended Automatic Weapons School, was qualified to use an automatic weapon, and had fired between twenty and twenty-five different automatic weapons. Whether a witness qualifies as an expert is a matter to be decided by the trial court, and in the absence of abuse of that discretion, we will not reverse the trial court's decision. *Parker* v. *State,* 268 Ark. 441, 597 S.W.2d 586 (1980); *Harper* v. *State,* 7 Ark. App. 28, 643 S.W.2d 585 (1982). We are unable to see that the trial court abused its discretion in finding Branch an expert or in permitting him to testify that the weapon in question was an automatic weapon.

Appellant's last point for reversal is that the trial court erred in denying appellant's motion for a directed verdict because the State failed to show that the weapon that was the basis of one of the charges against appellant was actually an automatic weapon. The statute under which appellant was charged provides:

> "Machine Gun" applies to and includes a weapon of any description by whatever name known, loaded or unloaded, from which more than five [5] shots or bullets may be rapidly, or automatically, or semi-automatically discharged from a magazine, by a single function of the firing device.

Ark. Stat. Ann. § 41-3157 (Repl. 1977).

Two people, Sgt. Buck Bailey and Branch, both test fired the weapon, according to Branch's testimony. The gun would only fire one time. It would not eject a round or fire automatically. Once the spent shell was manually ejected, the gun would fire again. However, Branch explained that the gun was loaded with "a 30-caliber luger which is a different size than the 30 mouser. The bullets would fit in the chamber. . .and would fire but it would not work automatically." Branch obtained the right caliber of

ammunition from headquarters in Washington, D.C., but the gun would still fire only one time. He explained that stale ammunition was a likely explanation for the failure of the gun to operate automatically. He said the ammunition was some that had been confiscated and was probably too old to work. He opined that with proper ammunition, he had "no doubt that it would fire fully automatic."

We believe the trial court properly denied a directed verdict under these facts. In addition to his explanation that stale ammunition would account for the gun's not operating properly, Branch also testified that he could find no other, obvious reason for the gun's not working properly. Having qualified as an expert, Branch's testimony and opinion established at least a fact question for the jury concerning whether the seized weapon was a machine gun. Appellant offered no evidence to rebut Branch's opinion, and the jury clearly resolved that fact question against the appellant.

Affirmed.

CRACRAFT, C.J., and CLONINGER, J., agree.

Supplemental Opinion on Denial of Rehearing
November 7, 1984

680 S.W.2d 110

1. APPEAL & ERROR — REHEARING — FULL CONSIDERATION ON APPEAL. — The appellate court denies appellant's petition for rehearing on one point because that point was fully considered on appeal.
2. CRIMINAL PROCEDURE — DISCOVERY — FAILURE OF PROSECUTOR TO MAKE PROPER DISCOVERY ANSWERS. — A prosecuting attorney's failure to make proper discovery answers, although serious, is not reversible error absent a showing of prejudice to the defendant.
3. CRIMINAL PROCEDURE — DISCOVERY — TRIAL COURT'S DISCRETION. — Under Ark. R. Crim. P. 19.7 the trial court has the discretion to exclude or to admit material not disclosed through discovery based upon the likelihood that prejudice will result.

Petition for Rehearing; denied.

TOM GLAZE, Judge. Appellant's petition for rehearing is denied. Points two and three are without merit, but we will elaborate on points one and four.

Appellant's first point for rehearing is that appellant properly raised objections to the lack of probable cause which made the stop and arrest illegal. On appeal, appellant's third point for reversal was that the trial court erred in failing to suppress evidence seized as a result of an illegal arrest. Our review of the abstract indicates that both counsel for appellant and counsel for Doss argued at length below whether probable cause existed. However, most of their arguments involved probable cause to stop the car, to conduct a search and to seize items from the car, not probable cause to arrest. The clearest reference to the legality of the arrest was the trial court's specific finding that "this was a search incident to a valid stop and a valid arrest." However, even assuming that appellant properly raised the issue of the legality of the arrest, we believe that we fully covered this issue under appellant's second point on appeal, which we phrased as an allegation of error based upon the trial court's failure to admit evidence resulting from Sullivan's partici-pation in the search and *arrest*. We cited *Logan v. State*, 264 Ark. 920, 576 S.W.2d 203 (1979), which involved the legality of an arrest. Because we fully considered the arrest issue that appellant now urges us to review, we deny the petition on this point.

Appellant's fourth point for rehearing is that he objected to the admission of documents at trial for the same reason that he argued on appeal: that the State failed to furnish them through discovery. The documents, State's Exhibits 14-18, pertained to the chain of custody of evidence seized in the search. The appellant objected below "for hearsay reasons and also discovery reasons." The appellant failed to point out, to the trial court or on appeal, how he was prejudiced by the introduction of the documents. We have held that while an assertion that the prosecuting attorney failed to make proper discovery answers might be serious, it is required that prejudice be shown. *Fisk v. State*, 5 Ark. App. 5, 631 S.W.2d 626 (1982). Under Rule 19.7 of the Arkansas Rules of Criminal Procedure (Repl. 1977), the trial

court has the discretion to exclude or to admit material not disclosed through discovery, *Lear* v. *State,* 278 Ark. 70, 643 S.W.2d 550 (1982), based upon the likelihood that prejudice will result. *Fisk* v. *State, supra.* Appellant did not demonstrate, nor did we find, that prejudice resulted from the trial court's decision.

Petition for rehearing denied.